Hugo BAXTER, Rosana Morales, Vincente Marino, Jose Luis Herrera, and Eduardo Alvarado, Appellants,

v.

GARDERE WYNNE SEWELL LLP and Julian Nihill, Appellees.

No. 05–04–01672–CV.

Court of Appeals of Texas, Dallas.

Jan. 18, 2006.

Susan Lea Hays, Law Office of Susan Hays, P.C., Dallas, Edward C. Snyder, Jesse R. Castillo, Martin, Drought & Torres, Inc., San Antonio, for Appellants.

Edward F. Fernandes, David P. Whittlesey, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Austin, for Appellees.

Before Justices WHITTINGTON, MOSELEY, and O'NEILL.

## OPINION

Opinion by Justice O'NEILL.

The primary issue in this appeal is how the discovery rule operates with respect to the statute of limitations for claims under the Texas Security Act (TSA). Appellants Hugo Baxter, Rosana Morales, Vincent Marino, Jose Luis Herrera, and Eduardo Alvarado appeal a summary judgment granted in favor of Gardere Wynne Sewell LLP and Julian Nihill (referred to collectively as Gardere) based on limitations. Appellants contend the trial court erred in granting summary judgment because the discovery rule delayed accrual until they knew or should have known of Gardere's alleged involvement with fraud committed by one of its clients. In the alternative, they assert summary judgment was improper because they raised a fact question regarding fraudulent concealment. For the following reasons, we affirm the trial court's judgment.

In the 1980s and 1990s, appellants, all citizens and residents of Mexico, opened "investment advisory accounts" with Sharp Capital, Inc., an investment advisor located in Texas. Appellants sent money to Sharp to invest in conservative, liquid investments, such as CDs issued by U.S. banks. Sharp, however, began making very high risk investments, including making loans to a related company. Sharp's handling of its client funds violated the TSA. In the mid–1990s Sharp retained Gardere. According to appellants, Gardere, with knowledge of Sharp's securities violations, assisted Sharp in setting up offshore entities to allow it to avoid the regulatory

purview of the Securities and Exchange Commission (SEC).

In late 1998, due in part to the default on several allegedly illegal loans, Sharp failed. In November 1998, the SEC obtained a federal court order freezing Sharp's assets and appointing a special master to take over and manage Sharp. Appellants were sent a letter notifying them of the SEC's actions. Consequently, by November 1998, appellants were aware of their injuries and Sharp's misconduct.

Meanwhile, after Sharp's collapse but before the special master was appointed, Gardere took possession of Sharp's internal documents. After the special master was appointed, he requested copies of all the Sharp documents. Gardere delivered seventy-five boxes of documents to the special master. Gardere represented to the SEC that the seventy-five boxes it sent to the special master constituted all Sharp documents "excepting privileged documents."

However, appellants subsequently determined that Gardere had in fact held back twenty-seven boxes of Sharp's documents, only four of which did Gardere ultimately claim were privileged. The retained documents consisted of documents related to Gardere's representation of Sharp and according to appellants, showed Gardere's involvement with and complicity in Sharp's fraud.

Gardere did not deliver the documents to the special master until June 2001 and appellants did not obtain copies of the documents until April 2002. After they reviewed the documents, appellants filed suit against Gardere that same month. The claims against Gardere are all based on its actions in assisting Sharp to "get away with" violating Texas securities laws. Appellants specifically alleged claims under the TSA for aiding and abetting the sale of unregistered securities and for the sale of securities by untruth or omission. Appellants also alleged common law aiding and abetting securities violations and alleged a claim for "aiding & abetting/conspiracy" to commit fraud and conversion. Appellants alleged the discovery rule and fraudulent concealment prevented the statute of limitations from barring their claims.

Gardere moved for summary judgment asserting it conclusively established limitations barred appellants claims. The trial court granted Gardere's motion.

## Summary Judgment

The standards for reviewing summary judgment under rule 166a(c) are well-established. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex.App.-Dallas 2004, no pet.). A party moving for summary judgment on the statute of limitations must conclusively prove all the elements of that defense. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). To meet this burden, a defendant must negate the discovery rule if raised. *Murphy v. Mullin, Hoard, & Brown*, 168 S.W.3d 288, 291 (Tex.App.-Dallas 2005, no pet.).

A cause of action generally accrues when a wrongful act causes some legal injury to the plaintiff, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex.1997); *Prostok v. Browning*, 112 S.W.3d 876, 896 (Tex.App.-Dallas 2005), *aff'd in part, rev'd in part, on other grounds*, 165 S.W.3d 336 (Tex.2005). However, under the discovery rule, a cause of action will not accrue until the plaintiff knew or should have known of the wrongfully caused injury. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 735 (Tex.

2001); *Prostok,* 112 S.W.3d at 896. For the claim to accrue, the plaintiff need not know the specific nature of each wrongful act that may have caused his injury. *Prostok,* 112 S.W.3d at 896. Rather, it accrues when the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the "nature of his injury." *Childs v. Haussecker,* 974 S.W.2d 31, 40 (Tex.1998). Thus, the discovery rule only defers accrual of a cause of action until the plaintiff discovered, or should have discovered through reasonable diligence, the injury and that it was likely caused by the wrongful acts of another. *Id.* Once these requirements are satisfied, "limitations commences, even if the plaintiff does not know the exact identity of the wrongdoer." *Id.*

### Discovery Rule—TSA Claims

In its motion for summary judgment, Gardere asserted that, as a matter of law, appellants claims were barred by the TSA's three-year statute of limitations. Specifically, they maintained the summary judgment evidence conclusively established appellants knew or should have known of their injury and that it was caused by the wrongful acts of another no later than November 1998, when appellants were notified of Sharp's collapse and the SEC take over. Thus, appellants' April 2002 suit was untimely. The trial court agreed and granted Gardere's motion for summary judgment.

Appellants assert summary judgment was improper because the statute of limitations did not begin to run until they knew or should have known of Gardere's involvement in causing their injury. To support their interpretation of the discovery rule, they rely on federal cases decided under the Federal Securities Act. These cases hold that the federal discovery rule delays accrual until the plaintiff knew or should have known of the particular defendant's involvement in fraudulent conduct. *See, e.g., Levitt v. Bear Stearns,* 340 F.3d 94, 102 (2d Cir.2003); *Rahr v. Grant Thornton,* 142 F.Supp.2d 793, 797 (N.D.Tex.2000). Appellants acknowledge the federal cases are not binding, but assert we should follow them because the TSA was modeled after the federal act.

However, the Texas Supreme Court has clearly stated that the discovery rule delays accrual of a cause of action until the plaintiff knew or should have known of their *injury,* not the identity of the wrongdoer. *See Childs v. Haussecker,* 974 S.W.2d 31, 40 (Tex.1998); *see also KPMG Peat Marwick,* 988 S.W.2d at 749. Contrary to appellants' suggestion, nothing in our precedent would suggest our discovery rule injury-by-injury analysis is dependent upon the particular claims at issue. *See KPMG Peat Marwick,* 988 S.W.2d at 748–49 (DTPA claims against independent auditor); *Childs,* 974 S.W.2d at 40 (tort claims). Until the Texas Supreme Court carves out an exception for cases under the TSA, we will continue to apply the discovery rule as previously announced by that Court.

Moreover, the statute of limitations for the TSA has a "built-in" discovery rule. It provides that no person may sue more than three years after discovery of the untruth or omission or after discovery should have been made by the exercise of reasonable diligence. Tex.Rev.Civ. Stat. Ann. art. 581–33(H)(2) (Vernon Supp. 2005). Thus, the statutory limitations period expressly establishes the relevant inquiry for discovery rule purposes, *i.e.* discovery of the "untruth or omission." *Id.* It is not disputed that the untruth or omission for which Gardere is being sued was *Sharp's* untruth or omission regarding the sale of securities. It is also not in dispute that appellants knew or should have

known of this untruth or omission no later than November 1998 when they were made aware not only of Sharp's failure, but the SEC take over. Consequently, under the plain language of the TSA, appellant's April 2002 suit was not timely.

Moreover, as Gardere points out, while the TSA was modeled after the Federal Securities Act, differences between the federal law and Texas law justify treating the TSA discovery rule differently. For example, part of the reason the federal courts have applied the federal act's discovery rule on a "defendant-by-defendant" basis is that the federal act has a very short one-year limitations period. *See Levitt*, 340 F.3d at 103–04; *Zurich Capital Mkts., Inc. v. Coglianese*, 332 F.Supp.2d 1087, 1102–03 (N.D.Ill.2004). Despite the very short limitations period, claims under the federal act are governed by a heightened pleading requirement. *See* FED. R.CIV.P. 9(b); *Zurich Capital*, 332 F.Supp.2d at 1102. In contrast, the TSA not only has a significantly longer three-year limitations period, Texas does not require the same pleading specificity as required under the federal rules. *See* TEX.R. CIV. P. 45. These differences support our refusal to interpret the TSA's discovery rule in lock-step with the federal act.

Finally, we note that we cannot agree with appellants' assertion that it was not possible for them to discover Gardere's involvement in Sharp's misconduct until June 2001, when Gardere delivered the withheld documents to the special master. Although appellants may not have known of Gardere's specific "existence" until June 2001, they undoubtedly knew or should have known that Sharp had legal counsel and that counsel was assisting Sharp with setting up its U.S. business entities. Moreover, Gardere did not conceal its identity from the special master or the fact that it had withheld some documents—although there was a dispute regarding the number and nature of the documents withheld. Thus, with minimal investigation, appellants could have discovered not only that Gardere existed and represented Sharp, but that it had withheld Sharp documents. Under these circumstances, we cannot agree discovery of Gardere's involvement was impossible.

## FRAUDULENT CONCEALMENT— COMMON LAW CLAIMS

██ Appellants next assert fact issues concerning fraudulent concealment preclude summary judgment in favor of Gardere on their non-TSA claims. Here, appellants assert that unlike the discovery rule, the doctrine of fraudulent concealment, if proven, will toll limitations until appellants discovered the identity of each defendant involved with Sharp's misconduct. In *Otis v. Scientific Atlanta*, 612 S.W.2d 665, 667 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.), this Court held that concealment of one's identity does not toll the statute of limitations when, regardless of the defendant's identity, the plaintiff knows, or reasonably should know, he has a cause of action. In other words the doctrine of fraudulent concealment will not toll limitations unless the wrongdoer fraudulently conceals the plaintiff's *cause of action*. *Otis v. Scientific Atlanta*, 612 S.W.2d 665, 667 (Tex.Civ.App.-Dallas 1981,); *see also Burns v. Thomas*, 790 S.W.2d 1, 2 (Tex. App.-Amarillo 1988), *rev'd on other grounds*, 786 S.W.2d 266 (Tex.1990). Here, appellants were aware of their cause of action in the fall of 1998, but were unaware of all the potential defendants. Under these circumstances, the doctrine of fraudulent concealment will not toll the running of the statute of limitations. *See Burns*, 790 S.W.2d at 2.

■ In the alternative, appellants assert that "equitable estoppel" prevents Gardere from relying on limitations. According to appellants, Gardere should be "estopped" from relying on limitations because it concealed its wrongdoing by withholding the Sharp documents from the special master. Appellants are merely restating their fraudulent concealment claim, a doctrine based on equitable estoppel. *See Li v. Univ. of Tex. Health & Science Center at Houston*, 984 S.W.2d 647, 653 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). To the extent they assert "equitable tolling" apart from fraudulent concealment, they have not made an effort to show the applicability of that doctrine. *See, e.g., Leonard v. Eskew*, 731 S.W.2d 124, 129 (Tex.App.-Austin 1987, writ ref'd n.r.e.) (equitable tolling applies when a defendant induces a plaintiff not to file suit regarding a claim the plaintiff *knows* it has).

■ Finally, appellants assert summary judgment was improper on their claim for common law "aiding and abetting fraud" because that claim is governed by a four-year statute of limitations, making their April 2002 suit timely. In their petition, appellants included a paragraph requesting relief for "Aiding & Abetting/Conspiracy to Commit Fraud." In the motion for summary judgment, Gardere asserted all appellant's claims were governed by either a two- or three-year limitations period. It asserted all claims were time barred because appellants filed suit more than three years after accrual. In its response, appellants did not dispute the applicable limitations periods, but argued that the discovery rule and fraudulent concealment prevented the statute of limitations from barring their suit. Now, for the first time on appeal, appellants assert their claim for "aiding and abetting fraud," as opposed to "adding and abetting conspiracy," is governed by a four-year statute of limitations.

Appellants' petition did not separate their claim for aiding and abetting fraud from their claim for aiding and abetting conspiracy. Nor did their response to the motion for summary judgment separate these claims, much less argue that the two claims were governed by different limitations periods. Indeed, appellants acknowledge this claim has not been recognized as an independent claim by the Texas Supreme Court and, for the first time on appeal, rely on federal precedent to argue the claim is governed by a four-year, instead of a two-year, limitations period. Issues a nonmovant contends avoid summary judgment that are not expressly presented to the trial court by written answer or other written response to the summary judgment motion are waived on appeal. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979). We conclude appellants waived any argument that the aiding and abetting fraud claim was governed by a different limitations period than their other claims.

After reviewing the briefs and the summary judgment record, we conclude appellants have failed to establish reversible error. We affirm the trial court's judgment.