# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00250-CV

**Alexandra Krot and American Homesites TX, LLC, Appellants**

**v.**

**Fidelity National Title Company, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-GN-14-000590, HONORABLE TIM SULAK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellants Alexandra Krot and American Homesites TX, LLC, appeal from a summary judgment granted in favor of appellee Fidelity National Title Company. We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellants allege that they invested $525,000 with various parties (the Developer Defendants) to acquire a 50% ownership interest in a parcel of land located in Travis County, Texas. Appellants concede that, as late as August and September 2006, they discovered, among other things, that (1) "they had been swindled" by the Developer Defendants, (2) the Developer Defendants had made numerous false misrepresentations, (3) the purchase contract that induced their investment was "bogus" and "fraudulent," and (4) a defendant had confessed that the purchase contract was "fictitious" and "forged." Subsequently, in October 2006, Appellants claim that the subject property was "fraudulently conveyed" in derogation of their expectation of obtaining an ownership interest

in the property in exchange for their investment. On November 21, 2006, they sued the Developer Defendants, seeking a judgment awarding them a 50% undivided ownership interest in the subject property and alleging various causes of action, including assorted fraud theories, breach of fiduciary duty, and money laundering. Although Appellants knew when they filed suit that Fidelity had been the title company and escrow agent for the October 2006 closing, they did not join Fidelity as a defendant until May 3, 2013.

In their live pleading, Appellants, who were not parties to either the land-purchase contract or the closing at issue, allege that Fidelity engaged in money laundering in connection with various disbursements and transfers of escrow funds and conspired with the Developer Defendants to commit fraud, breach of fiduciary duty, and breach of contract.[1] Appellants assert that their investments with the Developer Defendants were ultimately deposited in Fidelity's escrow accounts, that Fidelity created several files in a scheme to "fraudulently" close on real-estate transactions involving the subject property, and that Fidelity used the deposited escrow funds to aid the Developer Defendants in carrying out and concealing the fraud. Appellants claim that Fidelity knew Appellants had provided the funds that had been deposited in the escrow accounts and that the relevant transaction documents were fraudulent, forged, and/or part of a scheme to defraud them and other unnamed investors in a massive land swindle.

Fidelity responded by filing a general denial and asserting several affirmative defenses, including that all of Appellants' claims against it are barred by the applicable statutes of limitations.

---

[1] The claims against Fidelity are the same as those asserted against the Developer Defendants, except for breach of contract, which is alleged only under a conspiracy theory, and negligence, which has been asserted against other defendants but not Fidelity.

Although Appellants did not sue Fidelity until nearly seven years after discovering they had been duped, they maintain that the limitations period was extended because Fidelity fraudulently concealed its role in the conspiracy. Appellants' fraudulent-concealment theory is premised on Fidelity's alleged failure to fully produce documents responsive to a 2007 discovery request, which Appellants had served on Fidelity as a non-party in Appellants' original lawsuit against the Developer Defendants. According to Appellants, they had requested that Fidelity produce documents related to the land transaction and, without objecting to the request, Fidelity had produced 401 pages of documents.

Then, in 2012, Fidelity's closing records were subpoenaed in a federal lawsuit to which neither Appellants nor Fidelity was a party. In response to the subpoena, Fidelity asserted that all responsive documents had been destroyed pursuant to Fidelity's document-retention policies. In 2013, however, Fidelity produced more than 6,000 pages of documents that were apparently responsive to the federal-court subpoena. Appellants contend that the additional documents revealed, for the first time, Fidelity's role in transferring money between escrow accounts and opening multiple files with respect to the subject property transaction. Appellants claim that the funds deposited in Fidelity's escrow accounts originated from their investments and that the documents Fidelity produced in 2013 disclosed that it had facilitated and furthered the fraudulent land scheme by transferring and disbursing funds from the escrow accounts and by preparing closing documents that were fraudulent and based on fraudulent contracts.

Fidelity moved for summary judgment on the grounds that, as a matter of law, (1) all of Appellants' claims are barred by the applicable statutes of limitations, (2) the fraudulent-concealment doctrine does not apply to toll limitations in this case, and (3) there is no

private right of action for money laundering. *See* Tex. R. Civ. P. 166a(c). Fidelity also asserted that there is no evidence to support application of the fraudulent-concealment doctrine and no evidence to support one or more elements of each of Appellants' claims. *See id.* R. 166a(i). Among other arguments, Fidelity asserted that there is no evidence it concealed material facts or that it was under a duty to disclose the alleged wrong.

In response to Fidelity's summary-judgment motion, Appellants asserted that Fidelity actively "suppressed the truth" by deliberately withholding documents in 2007, denying in 2012 that additional documents existed, and waiting until 2013 to produce documents elucidating the extent of its role in the conspiracy.[2] *See Santanna Natural Gas Corp. v. Hamon Operating Co.*,

---

[2] Fraudulent concealment may also be based on failure to disclose when there is an affirmative duty to disclose. Fidelity asserted in its motion for summary judgment that it had no duty to disclose as a matter of law or, in the alternative, there is no evidence to support the existence of a relationship between Fidelity and Appellants giving rise to a duty to disclose. Fidelity pointed out that Appellants had admitted that (1) Fidelity made no representations to them in connection with their investments or the land transactions, (2) Appellants were not parties to any relevant land-purchase contract, and (3) Appellants were not parties to the October 2006 closing.

In their summary-judgment response, Appellants disclaimed reliance on a duty to disclose as the basis for its fraudulent-concealment claim. On appeal, however, they now summarily assert that Fidelity did in fact have a duty to disclose as a co-conspirator to parties under a fiduciary duty to disclose, who had made material misrepresentations to Appellants. Appellants appear to argue that (1) there is evidence that conspirators other than Fidelity owed them a fiduciary duty and (2) for purposes of the fraudulent-concealment analysis, any such fiduciary relationship must be imputed to Fidelity as a co-conspirator. Appellants waived this argument, however, by disclaiming reliance on the duty-to-disclose theory and failing to assert it as a bar to summary judgment. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). But even if the argument had not been waived, Appellants neither cite authority to support its "imputed duty" theory nor argue for the extension of existing law. The only authority Appellants cite is *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, which holds that "[when] a third party knowingly participates in the breach of a duty of a fiduciary, such party becomes a joint tortfeasor with the fiduciary and is liable as such." 160 S.W.2d 509, 514 (Tex. 1942). *Kinzbach* holds that *liability* for breach of fiduciary duty may be imposed even in the absence of a fiduciary relationship when a nonfiduciary is knowingly complicit in aiding or inducing a breach of trust, but the opinion neither states nor can be reasonably read to suggest that the *duties* of a fiduciary, including any duty of disclosure, are

4

954 S.W.2d 885, 891 (Tex. App.—Austin 1997, pet. denied) (if fraudulent-concealment claim is based on affirmative misrepresentation rather than failure to disclose, no proof of special relationship giving rise to duty to disclose is required). Stated another way, Appellants alleged that Fidelity's partial disclosure of responsive documents equated to an active misrepresentation and suppression of the truth. Although focusing predominantly on alleged evidence of fraudulent concealment, Appellants purported to produce at least some evidence to support their claims that (1) Fidelity conspired with the Developer Defendants to defraud them, (2) Appellants were the source of $25,000 that Fidelity applied, through a credit and then a transfer, to two different escrow accounts used to "fraudulently" transfer the subject property, (3) Appellants were the source of $475,000 that Fidelity received from the Developer Defendants, held in escrow, and then distributed to third parties without Appellants' consent, (4) Fidelity prepared final closing statements "falsely" stating that $8.5 million had been contributed to the closing and then distributed over $2 million to co-conspirator defendants, and (5) Fidelity knew that the buyer and seller in the October 2006 transaction were entities that were actually the same parties and further knew that those parties were "shell companies" used by the Developer Defendants to funnel money to themselves.[3]

The trial court granted Fidelity's motion for summary judgment without stating the grounds. The trial court then severed all claims for and against Fidelity into a separate cause of action, making the summary judgment final and appealable.

---

imputed to a co-conspirator. Thus, even if the argument had been adequately asserted in the trial court, it has been waived on appeal due to inadequate briefing. *See* Tex. R. App. P. 38.1(i).

[3] We express no opinion as to whether the record supports Appellants' characterization of the summary-judgment evidence.

In two issues on appeal, Appellants argue that summary judgment was improper because (1) there is more than a scintilla of evidence that limitations is tolled based on Fidelity's concealment of its role as a co-conspirator, (2) there is at least some evidence to support its conspiracy claim, and (3) evidence of the conspiracy is sufficient to make Fidelity a joint tortfeasor as to the other claims asserted against Fidelity.

## DISCUSSION

We review the granting of a motion for summary judgment de novo.[4] *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). When the trial court does not specify the grounds for its ruling, summary judgment must be affirmed if any of the grounds on which judgment was sought are meritorious.[5] *State v. Ninety Thousand Two Hundred Thirty–Five Dollars & No Cents in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013).

A defendant who moves for summary judgment on the affirmative defense of limitations has the burden to: (1) conclusively prove when the cause of action accrued and (2) negate

---

[4] The standards for reviewing a summary judgment are well established and undisputed on appeal. *See, e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* Tex. R. Civ. P. 166a(c), (i). Accordingly, we need not repeat them here.

[5] Appellants do not challenge the grounds asserted in the motion for summary judgment on its money-laundering claim. Accordingly, summary judgment must be affirmed as to that claim. *See, e.g.*, *Richardson v. Johnson & Higgins of Tex., Inc.* 905 S.W.2d 9, 11 (Tex. App.—Houston [1st Dist.] 1995, writ denied) ("When a summary judgment order does not state the specific grounds on which it was granted, a party appealing from the judgment . . . must show that each of the independent arguments alleged in the motion is insufficient to support the order."). Fidelity contends that Appellants also failed to challenge other grounds raised in its summary-judgment motion, but our disposition of the case obviates any need to consider the sufficiency of Appellants' briefing to challenge other grounds on which the trial court could have rendered judgment. *See* Tex. R. App. P. 47.1.

the discovery rule, if it has been asserted and applies. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990). If the defendant conclusively establishes that the statute of limitations bars the action, the burden shifts to the plaintiff to produce evidence raising a fact issue in avoidance of the statute of limitations. *Rubio*, 185 S.W.3d at 846. Appellants neither pleaded nor asserted that the discovery rule is applicable; therefore, our analysis focuses first on when Appellants' claims accrued and whether there is evidence to support tolling limitations based on fraudulent concealment.

A cause of action accrues and the limitations period begins to run when facts come into existence that authorize a claimant to seek a judicial remedy. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011). Thus, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the party learns of the injury and regardless of whether all resulting damages have occurred. *See, e.g.*, *Via Net*, 211 S.W.3d at 313; *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). When a cause of action accrues is typically a question of law. *Exxon Corp.*, 348 S.W.3d at 202.

The evidence in the record, including Appellants' judicial admissions, reflects that, Appellants claims accrued no later (and probably earlier) than the date suit was filed against the Developer Defendants—November 21, 2006. Appellants do not dispute that the statute of limitations for civil conspiracy is two years and that the limitations period for breach of fiduciary duty and each of the various fraud claims is four years. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(4), (5) (limitations period for fraud and breach of fiduciary duty is four years); *Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 719 (Tex. App.—Houston [14th Dist.] 2010, no pet.)

7

(holding that statute of limitations for conspiracy is two years and is not based on statute of limitations for underlying tort). Appellants sued Fidelity long after the applicable limitations periods had expired. Thus, unless there is some evidence of fraudulent concealment, Appellants claims are time-barred.

Fraudulent concealment is an equitable doctrine that is fact-specific. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011). "Fraudulent concealment tolls limitations 'because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run.'" *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011) (quoting *S.V.*, 933 S.W.2d at 6). A defendant's concealment of wrongdoing may therefore toll the running of limitations. *Id.*

The fraudulent-concealment doctrine requires that Appellants prove that Fidelity "'actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong.'" *See id.* (quoting *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001)). Appellants must also establish that they reasonably relied on the deception. *BP Am.*, 342 S.W.3d at 67-69. Thus, fraudulent concealment tolls the statute of limitations only until "the fraud is discovered or could have been discovered with reasonable diligence." *Id.* at 67.

Appellants do not contend that they lacked knowledge of their injury, their claims, the cause of their injury, or the existence of the alleged conspiracy; rather, they contend that Fidelity's identity as a co-conspirator was actively concealed from them based on Fidelity's failure to produce all documents responsive to the 2007 discovery requests. Fidelity asserts that there is no

evidence of any of the fraudulent-concealment elements.[6] We conclude that, at a minimum, there is no evidence that Fidelity concealed any material fact.

Appellants admit knowing about Fidelity's involvement with the October 2006 property closing when they initially filed suit against the Developer Defendants. Appellant's fraudulent-concealment allegations rely on the disparity in the number of documents Fidelity produced in 2007 versus those produced in 2013. But that fact alone does not constitute evidence that any material facts were concealed until 2013. Appellants have not identified what documents they received in 2013 that were not produced in 2007, and there is no evidence that any documents not produced until 2013 were probative of Fidelity's involvement in the alleged land-fraud scheme. Appellants have thus failed to produce evidence demonstrating that Fidelity's purported withholding of responsive documents in 2007 concealed an alleged wrong.

Moreover, the mere failure to disclose one's identity does not amount to fraudulent concealment when a party is otherwise aware of the existence of a cause of action. *See Baxter v. Gardere Wynne Sewell LLP*, 182 S.W.3d 460, 464 (Tex. App.—Dallas 2006, pet. denied) (rejecting argument that fraudulent concealment tolled limitations until plaintiffs discovered identity of each defendant involved with alleged misconduct; fraudulent concealment applies to concealment of plaintiff's cause of action and does not toll limitations because plaintiffs are "unaware of all the potential defendants"); *Otis v. Scientific Atlanta, Inc.*, 612 S.W.2d 665, 666 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.) (observing absence of authority supporting "the proposition that in Texas

---

[6] Fidelity also contends that, as a nonparty to the litigation, it was under no duty to respond to the discovery requests, which it says were served on it at its New York offices. Fidelity further maintains that there is no competent summary-judgment evidence that identifies the scope of the 2007 discovery requests. We need not, and thus do not, decide these issues.

concealment of one's identity tolls the running of the statute of limitation on a cause of action against that person"). In the present case, Appellants knew that they had contributed money to the investors with the expectation that the funds would be used to acquire the subject property. Fidelity's identity and role in closing the land transaction was also known to Appellants, and if Appellants did not know initially that Fidelity had handled escrow funds related to the transactions or the alleged source of those funds, those circumstances could have been discovered with the exercise of reasonable diligence.

For the foregoing reasons, we conclude that Appellants failed to meet their burden of producing at least some evidence to support an essential element of fraudulent concealment in avoidance of limitations. Appellants' claims for fraud, conspiracy, and breach of fiduciary duty are therefore time-barred. We affirm the trial court's take-nothing summary judgment in Fidelity's favor without considering the propriety of summary judgment on any other basis. *See* Tex. R. App. P. 47.1.

_____
J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed: December 31, 2014