**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00272-CV**
_____

**JOE R. CHAPMAN, Appellant**

**V.**

**QAMAR U. ARFEEN, ET AL, Appellees**

**On Appeal from the 58th District Court**
**Jefferson County, Texas**
**Trial Cause No. A-196,015**

**MEMORANDUM OPINION**

The purpose of summary judgment procedure is to allow courts to summarily end a case when only questions of law are involved and no genuine issues of fact remain. *G&H Towing Co. v. Magee*, 347 S.W.3d 293, 296–97 (Tex. 2011). Joe R. Chapman appeals the February 29, 2016 summary judgment order that dismissed all of his claims against Qamar U. Arfeen; Arfeen Properties, LP; Harbor Hospital Managers of Southeast Texas, LLC; HHCS Managers, LLC; Harbor Hospice Managers, LLC; Harbor Healthcare System, LP; Harbor Hospital of Southeast

Texas, LP; Harbor Hospice of Austin, LP; Harbor Hospice of Alexandria, LP; Harbor Hospice of Arlington, LP; Harbor Hospice of Beaumont, LP; Harbor Hospice of Baytown, LP; Harbor Hospice of Bay City, LP; Harbor Hospice of Bryan-College Station, LP; Harbor Hospice of Corpus Christi, LP; Harbor Hospice of Central Houston, LP; Harbor Hospice 28, LP; Harbor Hospice of Central San Antonio, LP; Harbor Hospice of East Dallas-Fort Worth, LP; Harbor Hospice of East Houston, LP; Harbor Hospice of East Texas, LP; Harbor Hospice of Fort Worth, LP; Harbor Hospice of Gulf Coast, LP; Harbor Hospice of Georgetown, LP; Harbor Hospice of Harlingen, LP; Harbor Hospice of Houston, LP; Harbor Hospice of Lafayette, LP; Harbor Hospice of Lake Charles, LP; Harbor Hospice of Livingston, LP; Harbor Hospice 26, LP; Harbor Hospice of McAllen, LP; Harbor Hospice of Medical Center-Houston, LP; Harbor Hospice of North Dallas-Fort Worth, LP; Harbor Hospice of North San Antonio, LP; Harbor Hospice Northwest Houston, LP; Harbor Hospice of Oakdale, LP; Harbor Hospice of Richmond, LP; Harbor Hospice of San Antonio, LP f/n/a Harbor Hospice of South Texas, LP; Harbor Hospice of South Dallas-Fort Worth, LP; Sunshine Hospice, LP; Harbor Hospice of South Houston, LP; Harbor Hospice of South San Antonio, LP; Harbor Hospice of Texas, LP; Harbor Hospice 27, LP; Harbor Hospice of Victoria, LP; Harbor Hospice of West Dallas-Fort Worth, LP; Harbor Hospice of West Houston, LP; Harbor Hospice

2

of Longview, LP; Harbor Hospice Southeast Houston, LP; Harbor Hospice of Texarkana, LP; Harbor Home Health, LP; and Harbor Hospital Land Investors of Southeast Texas (collectively referred to as Defendants unless specifically referred to otherwise as explained below). The claims dismissed were for breach of contract, breach of fiduciary duty, conversion, theft, and fraud, as well as Chapman's request seeking declaratory judgment about his ownership interests, if any, in the entities. Defendants, who were also counter-plaintiffs in the lower court, appeal the trial court's July 22, 2016 grant of Chapman's summary judgment dismissing all their counter-claims against Chapman for attorney's fees, breach of fiduciary duty, and duty of loyalty.

For the reasons described below, we affirm in part and reverse in part the trial court's February 29, 2016 order granting Defendants' summary judgment relief on Chapman's claims against Defendants. We affirm in part and reverse in part the trial court's July 22, 2016 order granting Chapman's summary judgment based on Defendants' claims against Chapman.

## I. BACKGROUND

In 2005, Arfeen and others, including Chapman, began a business venture and opened a hospice in Beaumont, Texas, called Harbor Hospice of Beaumont. Arfeen or Arfeen Properties was the general partner and Chapman, as well as others,

3

retained a limited partner interest. The healthcare venture proved profitable and several more limited partnerships were created across the Gulf Coast, including some in which Chapman undisputedly owned limited partnership interests: (1) Harbor Hospice of Beaumont, (2) Harbor Hospice of Gulf Coast, (3) Harbor Hospice of Baytown, (4) Harbor Hospice of Austin, (5) Harbor Hospice of Oakdale, (6) Harbor Hospice Lafayette, (7) Harbor Healthcare System, (8) Harbor Hospital of Southeast Texas, and (9) HHCS Managers (collectively called the "Ownership Entities"). In the other entities, Chapman claims he owns a limited partnership interest as a result of an agreement with Arfeen. Chapman was also an employee and served as the chief operating officer or manager for these entities, including Harbor Healthcare System, which operated as the main entity overseeing the other entities.

Chapman alleges that after he resigned from his employment, he was told for the first time that he was no longer a partner in any of the entities; but rather, his limited partnership interests had been converted into profit interests in April or May 2010, after which he received "profit sharing payments" or bonuses, instead of partnership distributions. Chapman filed suit in August 2014, seeking a declaratory judgment affirming his ownership interest in each healthcare entity named a party or, in the alternative, damages and other remedies for fraud, breach of contract, breach of fiduciary duty, conversion, and for theft for the wrongful taking of his

4

ownership interests. Defendants collectively answered and asserted affirmative defenses to bar Chapman's claims by way of statute of frauds, statute of limitations, and ratification of the alleged assignments of his ownership interests. Defendants also filed counterclaims against Chapman contending that as a company officer, Chapman breached his fiduciary duty and his duty of care to the healthcare entities. Defendants also sought attorney's fees from Chapman for defending against Chapman's claims.

Defendants collectively moved for summary judgment on the following grounds: (1) all of Chapman's claims against the Ownership Entities were barred by the statute of limitations; (2) Chapman ratified the change in his ownership interests in the Ownership Entities; (3) Chapman's claims against the remainder of the Harbor entities were barred by the statute of frauds; and (4) Chapman's claims to an ownership interest in the remainder of the Harbor entities failed as there was no agreement to create an ownership interest in any of the entities. Following a non-evidentiary hearing, the trial court granted Defendants' motion for summary judgment on February 29, 2016, dismissing all of Chapman's claims in their entirety without specifying the ground or grounds relied on for the ruling. Soon thereafter, Chapman filed his own no-evidence and traditional motion for summary judgment seeking dismissal of all of Defendants' counterclaims against him. The trial court

granted summary judgment on July 22, 2016, for Chapman and dismissed all of Defendants' counterclaims against him. Both Chapman and Defendants appeal the summary judgment orders dismissing all claims and counterclaims of all parties.

## II. STANDARD OF REVIEW

We review the trial court's grant of summary judgment *de novo*. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional summary judgment motion, the movant bears the burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When, as here, the defendants (or counter-defendant) as movants requested summary judgment on both its affirmative defenses and on plaintiff's (or counter-plaintiffs') claims, we determine whether the defendants (or counter-defendant) conclusively negated at least one element of plaintiff's (or counter-plaintiffs') causes of action or conclusively proved every element of their affirmative defenses. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

A matter is conclusively established if reasonable people could not differ about the conclusion drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). To establish facts through an interested witness, the testimony must be clear, positive, direct, credible, free from contradiction, and uncontroverted even though it could have been readily controverted. Tex. R. Civ. P. 166a(c); *McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex. 2003). If the testimony does not meet these requirements, it will not support a summary judgment. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989). If the movant meets its burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). To determine if the nonmovant raises a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)). The nonmovant must produce more than a scintilla of evidence of the challenged element to preclude summary judgment. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013). More than a scintilla of

evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

When, as here, the trial court does not specify the grounds on which it relied to grant summary judgment, we must affirm the summary judgment if any of the independent summary judgment grounds are meritorious. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## III. APPEAL OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Issue One: Plaintiff's Objections to the Summary Judgment Evidence of Defendants

Summary judgment does not have to be a hit or miss exercise—one shot and you are done. Texas Rule of Civil Procedure 166a provides for an orderly process that includes special exceptions, amendments, and flexibility in deadlines for filing evidence, for conducting hearings, and for granting continuances. The summary judgment procedure is provided for in the Rules so the trial court may promptly dispose of cases that involve unmeritorious claims or untenable defenses. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n.5 (Tex. 1979). "Promptly" is juxtaposed to the length of time necessary for the litigants to conduct a full trial by jury. Summary judgment procedure should not be used to unfairly deprive litigants of their right to a trial by jury or be used to try a case involving

disputed issues of material fact by affidavit and deposition testimony. *See id*. at 678; *Collins v. Cty. of El Paso*, 954 S.W.2d 137, 145 (Tex. App.—El Paso 1997, pet. denied).

To support their position that Chapman's limited ownership interests were voluntarily converted to "profit interest[s] paid out as bonuses," Defendants rely upon documentary evidence in the form of assignments and redemption agreements, as well as Chapman's ratification of such agreement by accepting, without objection, periodic "bonus profit payments." The affidavit of Tracy Haygood, Vice President of Finance for Harbor Healthcare Systems, was offered to prove that such payments were made and accepted by Chapman. Further, Haygood's affidavit included the following statements: "Bonus checks were paid separately and by paper check[,]" and "[t] he payment of bonuses based on profits continued with some regularity from May/June, 2010 until Mr. Chapman's resignation in July, 2014." The affidavit was filed on behalf of at least nine separate entities that intended to rely upon such testimony to prove their affirmative defense of ratification as a matter of law.

Chapman objected to the summary judgment evidence Defendants submitted to support their motion for summary judgment. Chapman raised questions as to the authenticity of important business documents relied upon by Defendants and swore, under oath, that a stamped image of his signature was used without his direction or

9

consent to reportedly memorialize his agreement to assign or otherwise convert his ownership interests in these healthcare entities. Texas Rules of Evidence 1002 and 1003 provide that to prove the content of a writing, the original writing is required if a question is raised as to the authenticity of the original. Tex. R. Civ. P. 1002, 1003. The trial court overruled the objections and considered the duplicates of the signature-stamped documents as evidence supporting the Defendants' motion. Because genuine issues of material fact exist as to the authenticity of the signature-stamped documents, the trial court erred by overruling Chapman's objections to them.

Chapman also objected to Haygood's affidavit. As previously stated, to establish facts through an interested witness in a summary judgment proceeding, the testimony must be clear, positive, direct, credible, free from contradiction, and uncontroverted even though it could have been readily controverted. Tex. R. Civ. P. 166a(c); *McIntyre*, 109 S.W.3d at 749. If the testimony does not meet these requirements, it will not support a summary judgment. *Casso*, 776 S.W.2d at 558. The phrase "could have been readily controverted" in Texas Rule of Civil Procedure 166a(c) means the testimony is of a nature that can be effectively countered by opposing evidence. *Id.*; *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997); *Casso*, 776 S.W.2d at 558.

In his objections, Chapman claimed that Haygood's affidavit contained unsubstantiated factual conclusions and failed to identify which entity allegedly paid "profit interest paid out as bonuses" and to identify when the payments were first made from each entity. Haygood's testimony could not have been "readily controverted" as required by Rule 166a(c) because Haygood's affidavit did not set forth each of the payments from each entity that they allege Chapman received and accepted "profit interest paid out as bonuses" following the date Defendants allege Chapman voluntarily assigned or converted his limited ownership interests. Accordingly, the trial court erred in failing to grant Chapman's objections to Haygood's affidavit and in considering it as evidence that conclusively established the nature of the payments Chapman received.

**B. Issues Two and Three: Dismissal of Chapman's Claims Against Entities with Undisputed Ownership**

Chapman complains in his second issue that the trial court erred in granting the Ownership Entities' summary judgment based on their affirmative defense of statute of limitations because he submitted more than a scintilla of evidence raising questions of material fact about when his claims accrued or when he reasonably should have become aware of his claims. Chapman argues the Ownership Entities failed to conclusively establish when he discovered that he had claims against the

11

Ownership Entities. In his third issue, Chapman argues that the Ownership Entities did not conclusively prove their affirmative defense of ratification.

**1. Statute of Limitations**

A defendant seeking summary judgment based on limitations must conclusively prove when the cause of action accrued and, if the plaintiff has pleaded the discovery rule or another defensive theory, the defendant must conclusively negate these claims. *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 646 (Tex. 2000); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If, as here, the summary judgment order does not specify the grounds on which it was granted, the appealing party must establish on appeal that none of the proposed grounds is sufficient to support the judgment. *Rogers v. Ricane Enters. Inc.*, 772 S.W.2d 76, 79 (Tex. 1989).

It is undisputed Chapman's claims are governed either by the four-year or the two-year statute of limitations. Chapman's request for declaratory judgment and claims of breach of contract or partnership agreement, breach of fiduciary duty, and fraud are governed by a four-year limitation period, while he was required to file suit on his claims for conversion and theft within two years after the day those causes accrued. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (West 2017), § 16.004 (West 2002). In their motion for summary judgment, the Ownership Entities asserted

12

the evidence conclusively proved that Chapman was aware of the transfers or assignments of his ownership interests for more than four years before he sued, so limitations barred his claims.

For this Court to affirm summary judgment on the affirmative defense of limitations, the Ownership Entities were required to establish that Chapman's claims accrued outside the applicable period of limitations that apply to Chapman's claims. "Causes of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011). When a cause of action accrues is generally a question of law. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). Knowledge of the injury initiates the accrual of the cause of action and triggers the claimant's duty to exercise reasonable diligence to investigate the problem, even if the claimant does not know the specific cause of the injury, the party responsible for it, or the full extent of it. *Exxon Corp.*, 348 S.W.3d at 207, 209. Under the discovery rule, a cause of action will not accrue until the plaintiff knew or should have known of the wrongfully caused injury. *Baxter v. Gardere Wynne Sewell LLP*, 182 S.W.3d 460, 462 (Tex. App.—Dallas 2006, pet. denied). Fraudulent concealment tolls limitations, but only until the fraud is

discovered or could have been discovered by using reasonable diligence. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011).

Chapman originally filed suit on August 18, 2014. The claims subject to the four-year statute of limitation must have accrued no earlier than August 18, 2010, to be barred. The claims subject to the two-year statute must have accrued no earlier than August 18, 2012, to be barred. The Ownership Entities argue Chapman agreed to assign his ownership interests in the entities to Arfeen or Arfeen Properties in May or June of 2010, and that from and after June 2010, he received no further ownership distributions from any of the entities; and instead, Chapman received profit payments.

The organizational agreements for each of the Ownership Entities expressly require that any assignment or change in ownership interest be in writing and signed by the parties. In support of their summary judgment, the Ownership Entities relied on the affidavit of Haygood, Vice President of Finance for Harbor Healthcare System, one of the Ownership Entities. In her affidavit, Haygood states that in April 2010, she was informed that employee-held limited ownership interests in a number of entities would be transformed from limited ownership interests to profit interests and be paid out as bonuses. Haygood's affidavit does not provide any evidence of a date that Chapman knew his partnership interests were converted into profit

interests. Haygood's affidavit states when she learned of the decision altering the interests. On the other hand, Chapman's affidavit asserts that he never agreed to assign or convert his ownership interests in the entities to profit interests. Therefore, to affirm the summary judgment, we must determine whether the other evidence the Ownership Entities submitted conclusively established that Chapman had actual or constructive notice of the alleged change in his ownership interests by August 18, 2010.

Haygood's affidavit includes federal income tax Schedule K-1 forms for fiscal year 2010 for the Ownership Entities that were sent to Chapman. The 2010 K-1s show that Chapman's partnership interest had been reduced to zero. However, the affidavit does not indicate when the Ownership Entities sent Chapman the 2010 K-1s or when Chapman received them.

Based on our review of the record, beginning April 2011, some of the Ownership Entities began providing Chapman with 2010 Schedule K-1s for the Ownership Entities that all indicated his various ownership interests were reduced to zero at the end of the 2010 tax-year. Deposition testimony made a part of the summary judgment record showed the K-1s for some of the other Ownership Entities were not issued until September 2011. Thus, the evidence in the record does not conclusively establish that Chapman received the K-1s by August 18, 2010.

15

Chapman's affidavit states that he did not review the K-1s when he received them. But regardless of whether he had actual notice of what was in them, he is deemed to have been placed on constructive notice of the changes they reflect to his interests in the Ownership Entities, as reflected on the forms.[1] Additionally, Chapman's yearly income tax returns for the years 2011 through 2014 are included in the summary judgment evidence, and none of them indicate that Chapman claimed a partnership interest in any of the Ownership Entities after 2010. Chapman filed his 2011 tax return on September 29, 2011. Additionally, even though Chapman's 2010 K-1 for Harbor Hospice of Beaumont shows he did not own an interest in the entity, Harbor Hospice's renewal application, which it filed with the Texas Department of Aging and Disability Services in January 2010, shows that Chapman owns 3% of that entity. To add, a capital account with Chapman's name is also included on Harbor Hospice of Beaumont's 2010 year-end reports. Accounting reports for Harbor Hospital Land Investors of Southeast Texas, which is another entity in which Chapman undisputedly owns an interest in to be discussed

---

[1] When an individual signs a Form 1040 when filing their income tax with the IRS, they are signing "[u]nder penalties of perjury" that the signor has "examined this return and accompanying schedules and statements, and to the best of [their] knowledge and belief, they are true, correct[.]"

later, reveal Chapman received distributions from it during 2011, including a November 2011 distribution.

The Ownership Entities also rely on a June 2010 email from Chapman's spouse to Haygood to argue that they conclusively established that Chapman's claims are barred by limitations. In the email, Chapman's wife asked Haygood to identify the entities associated with three "bonus checks" paid to Chapman. The Ownership Entities argue the email established that Chapman knew he was receiving profit sharing checks instead of partnership distributions. However, the email does not conclusively prove that Chapman was on notice by August 2010 that his ownership interests in the Ownership Entities had been converted to profit interests.

Defendants also contend that prior to August 18, 2010, Chapman executed documents acknowledging the change in his ownership interests in five of the nine Ownership Entities. Defendants attached copies of Redemption and Assignments or Amendments to the Partnership Agreements of the Ownership Entities as evidence of such conversion of Chapman's interests:

**a. Harbor Hospice Managers, LLC**

The Redemption and Assignment of Harbor Hospice Managers is dated November 5, 2012, to be effective as of January 1, 2010. While Chapman's signature is on the document, he signed it only in his capacity as Manager of Harbor Hospice

17

Managers, not individually. In another assignment, Chapman's signature is included in his individual capacity, but it is dated June 11, 2013, to be effective as of January 1, 2010. Nevertheless, Chapman filed a sworn affidavit with the trial court denying his signature on such documents and stating he did not authorize anyone to sign his name to execute such documents.

### b. Harbor Hospice of Gulf Coast, LP

Amendment No. 4 to the Limited Partnership Agreement is a business record intended to reflect certain changes in the partnership percentages "following the assignment by Janet Montagne and Joe Chapman of limited partnership interests to Arfeen Properties, LP effective April 30, 2010[.]" The document is dated "to be effective as of the 30th day of April, 2010." It contains a stamped signature of Chapman, but only in his capacity as Manager of HHCS Managers. No document represented to be an assignment executed by Chapman individually is in the record. Curiously, Amendment No. 5 is included in the record, "executed to be effective September 30, 2009," which purportedly shows the limited partnership interests of Harbor Hospice Gulf Coast as of that date. However, the partnership records do not reflect the ownership interests of either Montagne or Chapman causing confusion because the earlier numbered amendment was executed after the prior amendment but dated effective when they should have been listed as owners.

18

### c. Harbor Hospice of Baytown, LP

The organizational documents are included in the record, originally executed on May 28, 2008, containing a stamped signature of Chapman, as Manager of HHCS Managers, as General Partner, and evidencing Arfeen Properties and Harbor Hospice of Beaumont as the only initial limited partners. However, in a First Amended and Restated Agreement dated October 21, 2008, Chapman is listed as a 2.0% limited partner. Amendment No. 2 to the Agreement is "executed to be effective as of the 1st day of January, 2010[,]" and contains the stamped signature of Chapman, in his capacity as Manager for Harbor Hospice Managers, General Partner. The document recites that "the General Partner has elected to redeem the limited partner interests of Joe R. Chapman," and others, in accordance with Section 8.5 of the Partnership Agreement. However, the summary judgment record does not contain any document signed by Chapman individually, rather than stamped, assigning or redeeming his interest in the healthcare entity to the partnership, Arfeen, or Arfeen Properties.

### d. Harbor Hospice of Austin, LP

Attached as summary judgment evidence is Amendment No. 1 to the Agreement of Limited Partnership for Harbor Hospice of Austin, dated June 1, 2008. The business records show that Arfeen assigned limited partnership interests to Chapman and another. The document is signed by Arfeen, Chapman, and the other

19

limited partner in accordance with the original organizational agreement and evidences that Arfeen assigned a 2.0% limited partnership interest in the Ownership Entity to Chapman. Amendment No. 3 purports to represent an amendment to the organizational records to "reflect the changes in the partnership percentages following the assignment . . . by Joe R. Chapman of limited partnership interests to Qamar Arfeen." The document is signed only by Arfeen, as Manager of HHCS Managers, as General Partner, and is dated "to be effective as of the 1st day of October, 2010." Exhibit "A" to the document sets forth the limited partnership interests of other individuals, excluding Chapman. Amendment No. 4 to the Amended and Restated Agreement of Limited Partnership is also included in the record. It recites that the partnership records should be amended to reflect changes in the partnership percentages "following the assignment . . . by Joe R. Chapman of limited partnership interests to Qamar Arfeen." The document is signed only by Arfeen, as Manager of HHCS Managers, as General Partner, and is dated "to be effective as of the 30th day of November, 2011." Exhibit "A" to the document lists only Arfeen owning 100% of the limited partnership interest in the Ownership Entity. Amendment No. 5 to the Amended and Restated Agreement of Limited Partnership is included in the record and recites the Partnership Agreement is amended to reflect changes in the partnership percentages "following the assignment

20

. . . by Joe R. Chapman of limited partnership interests to Qamar Arfeen." The document is signed only by Arfeen, as Manager of HHCS Managers, as General Partner, and is dated "to be effective as of the 1st day of January, 2012." Exhibit "A" to the document lists Arfeen and another owning 40% of the limited partnership interests in the Ownership Entity. The summary judgment record does not contain any document signed by Chapman individually, rather than stamped, assigning or redeeming his interest in Harbor Hospice of Austin to the partnership, Arfeen, or Arfeen Properties.

### e. Harbor Hospice of Oakdale, LP

The original, amended, and restated operating agreements for Harbor Hospice Oakdale are included in the summary judgment record. Amendment No. 1 is included which purportedly reflects an assignment of all interest owned by Harbor Healthcare System, constituting a 100% sharing and ownership interest in Harbor Hospice of Oakdale, to "be assigned as follows: 1% to HHLC Managers, LLC, 93% to Arfeen Properties, LP, 1% to Brenda Anderson, 2% to Joe R. Chapman, 1% to Jennifer Mertz, and 2% to Janet Montagne." Such document is dated "to be effective as of the 1st day of January, 2008," and is signed by Arfeen as Manager. Amendment No. 2 to the First Amended and Restated Operating Agreement of Harbor Hospice of Oakdale recites the operating agreement is amended as follows: "The effective

21

date of the redemption of the Membership Interests of HHLC Managers, LLC, Brenda Anderson, Jennifer Mertz Burch, Joe R. Chapman, and Janet Montagne shall be January 1, 2010 (the 'Effective Date')." The document is dated "to be effective as of the 1st day of January, 2010[,]" and signed by Arfeen, Manager and as General Partner of Arfeen Properties. Exhibit "A" reflects that for a capital contribution of $1,000, purportedly to the partnership, Arfeen Properties owns 100% of all membership interest. The summary judgment record does not contain any document signed by Chapman individually, rather than stamped, assigning or redeeming his interest in Harbor Hospice of Oakdale to the partnership, Arfeen, or Arfeen Properties, or any other documentation evidencing the partnership redeemed the interests of Chapman.

### f. Harbor Hospice of Lafayette, LP

Amendment No. 1 to the First Amended and Restated Operating Agreement of Harbor Hospice of Lafayette is included in the summary judgment record and memorializes the assignment of 100% sharing and ownership interest in Harbor Hospice Lafayette as follows: 1% to HHLC Managers, 93% to Arfeen Properties, 1% to Brenda Anderson, 2% to Chapman, 1% to Jennifer Mertz, and 2% to Janet Montagne. The document is dated "Executed to be effective as of the 1st day of January, 2008[,]" and is signed by Arfeen, Manager. Amendment No. 2 to the First

22

Amended and Restated Operating Agreement of Harbor Hospice of Lafayette purports to memorialize an agreement of the partners to redeem the interests of HHLC Managers, Anders, Mertz Burch, Chapman, and Montagne, to be effective as of January 1, 2010. It is signed by Arfeen as Manager and as General Partner of Arfeen Properties. Exhibit "A" reflects that for a capital contribution of $1,000, purportedly to the corporation, Arfeen Properties, owns 100% of all limited partnership interest. The summary judgment record does not contain any document signed by Chapman individually, rather than stamped, assigning or redeeming his interest in Harbor Hospice Lafayette to the partnership, Arfeen, or Arfeen Properties, or any other documentation evidencing the partnership redeemed the interests of Chapman.

### g. Harbor Healthcare System, LP

The organizational agreement is included in the record and is signed by all recited limited partners and their spouses. It reflects, among other things, Arfeen owned a 59% limited interest and Chapman owned a 10% limited partnership interest. Amendment No. 2 to Agreement of Limited Partnership for Harbor Healthcare System, purportedly memorializing that Chapman assigned his 10% limited partnership interest to Arfeen, was stricken from the record by the trial court. The summary judgment record does not contain any other document signed by

Chapman individually, rather than stamped, assigning or redeeming his interest in Harbor Healthcare System to the partnership, Arfeen, or Arfeen Properties, or any other documentation evidencing that the partnership redeemed the interests of Chapman.

### h. Harbor Hospital of Southeast Texas, LP

The Limited Partnership Agreement of Harbor Hospital of Southeast Texas is included in the record and evidences the signature of Chapman on an Investor's Signature Page dated September 6, 2006, and it includes other investors. In sworn answers to written interrogatories, Harbor Hospital of Southeast Texas answered that Chapman received a 2% interest in the limited partnership on September 6, 2006. While Defendants contend Chapman assigned his interest to Arfeen or Arfeen Properties, no written document signed or even stamped by Chapman was made a part of the summary judgment record.

### i. HHCS Managers, LLC

The summary judgment record includes the Regulations of HHCS Managers, dated January 9, 2006. The document is signed by Arfeen, Chapman, and Montagne, as Managers/Members, as well as their spouses, and purports to represent that Arfeen owned 51% of the company, while Chapman and Montagne each owned 24.50%. Defendants have attached and incorporated into the summary judgment record an

Assignment, wherein Chapman individually conveys to Arfeen Properties, a 24.50% limited membership interest in HHCS Managers. The document was executed on June 11, 2013 but made to be effective as of the 1st day of January 2010. Chapman filed an affidavit in the summary judgment record denying that he signed or authorized his signature to be placed on any such document.

Finally, attached by Chapman as evidence in response to the Ownership Entities motion for summary judgment, Arfeen provided sworn deposition testimony in Cause Number E-192,576; styled *Sandeep Patel v. Harbor Hospice of Beaumont, LP, et al*, in the 172nd Judicial District Court of Jefferson County, Texas, on April 10, 2014, that neither he nor Arfeen Properties had acquired by assignment or transfer any of Chapman's interests in any of the entities.

Because much of the summary judgment evidence is controverted, we hold Defendants failed to conclusively establish that Chapman's four-year claims are barred by the applicable statutes of limitation. *See Pustejovsky*, 35 S.W.3d at 646. With respect to the two-year claims, on the other hand, we conclude the Schedule K-1s placed Chapman on notice of a potential claim regarding his interests in the Ownership Entities as of at least September 29, 2011, when Chapman filed his 2010 income tax return. The actions taken by the entities after Chapman's receipt of the tax documents, including him being named as an owner on a licensing form or

25

making distributions to him, were done prior to August 18, 2012. No controverting evidence is contained in the summary judgment record precluding summary judgment on the Defendants' affirmative defense of statute of limitations as to Chapman's claims that are governed by a two-year limitation period.

Moreover, neither the discovery rule nor fraudulent concealment saves Chapman's two-year claims. The K-1s conclusively established that Chapman was on constructive notice that his ownership interests had been converted more than two years before Chapman sued. *See Ross*, 356 S.W.3d at 927; *Baxter*, 182 S.W.3d at 462. Therefore, we sustain issue two as to the claims governed by the four-year statute of limitations, but we overrule issue two to the extent that Chapman seeks to overturn the trial court's ruling granting summary judgment on the claims he filed that are governed by the two-year statute of limitations.

**2. Ratification**

The Ownership Entities also asserted in the trial court that Chapman ratified the transfer of his ownership interests into profit interests in the entities, and thus his claims should be barred regardless of limitations. Chapman disputes this, and in his third issue argues that the Ownership Entities did not establish as a matter of law that he ratified the changes that were made to the ownership interest he held in the Ownership Entities.

26

Ratification is an affirmative defense. *Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980). The elements of ratification are: "(1) approval by act, word, or conduct; (2) with full knowledge of the facts of the earlier act; and (3) with the intention of giving validity to the earlier act." *White v. Harrison*, 390 S.W.3d 666, 672 (Tex. App.—Dallas 2012, no pet.). "A party ratifies an agreement when—after learning all of the material facts—he confirms or adopts an earlier act that did not then legally bind him and that he could have repudiated." *Id.* Because the Ownership Entities are movants in this summary judgment proceeding, they were required to conclusively establish that no genuine issue as to any material fact existed on their claim that Chapman ratified the conversion of his interests in the entities. *See* Tex. R. Civ. P. 166a(c). If the evidence of ratification is controverted, then the question is for the trier of fact, and summary judgment was improper. *Spangler v. Jones*, 797 S.W.2d 125, 131 (Tex. App.—Dallas 1990, writ denied).

The Ownership Entities assert that Chapman ratified the transfer of his ownership interests into profit interests in a variety of ways. They claim that in addition to the Schedule K-1s reflecting the change in Chapman's ownership interests, Chapman's 2011-2014 income tax returns do not show that he received partnership distributions from the entities. Further, the Ownership Entities argue that

27

Chapman cashed checks that were bonus checks, not partnership distributions. Additionally, the Ownership Entities claim that Chapman signed various company documents, two in particular, representing the redemption of his ownership interests in the entities. Last, the Ownership Entities assert that because Chapman was the chief operating officer for the entities, and because he has two advanced business degrees, his failure to act on the information, ratified the acts about which he complained.

The checks Chapman allegedly received are not in the record. Without evidence showing they were clearly marked as profit payments and not as partnership distributions, the fact that Chapman cashed them fails to conclusively prove that he knew his ownership interests had been changed. Moreover, the authenticity of the business documents and assignments that the Ownership Entities relied on were in dispute, so they also fail to conclusively establish that Chapman assigned or transferred his interests in the entities to Arfeen or to Arfeen Properties. The Ownership Entities also failed to conclusively establish that Chapman had seen the business records of the entities, so they failed to prove he was on notice the records reflected he no longer owned an interest in them. Because genuine issues of material fact preclude summary judgment on the Ownership Entities' affirmative defense of ratification, we sustain Chapman's third issue.

In a sub-issue under Chapman's fourth appellate issue (to be discussed in more detail below), he claims it is undisputed that he is a partner in Harbor Hospice of Lake Charles and Harbor Hospital Land Investors of Southeast Texas. Chapman argues the trial court erred in granting the motion filed by Defendants as to these two entities. Defendants agree and recognize that Chapman was an owner in these entities as well. We note that Schedule K-1s were not provided to Chapman for Harbor Hospice of Lake Charles or Harbor Hospital Land Investors of Southeast Texas. And, the record contains evidence that Harbor Hospital Land Investors of Southeast Texas made distributions to Chapman through November 2011. Thus, we conclude the trial court erred by granting the Defendants' motion in favor of Harbor Hospice of Lake Charles or Harbor Hospital Land Investors of Southeast Texas. We reverse the order regarding Chapman's claims against these two entities and remand the case as to all of Chapman's claims against Harbor Hospice of Lake Charles and Harbor Hospital Land Investors of Southeast Texas.

## C. Issue Four: Alleged Partnership Interest in Thirty-Nine Entities[2]

In Chapman's fourth issue, he contends the trial court erred in granting summary judgment regarding his claims that he owned a partnership interest in the Thirty-Nine Entities because the summary judgment evidence reveals questions of material fact exist about whether he holds an interest in them. While the partnership agreements for the Thirty-Nine Entities do not show Chapman owned an interest, Chapman claimed that Arfeen verbally promised him a 2% interest in "every entity going forward[,]" a representation that Chapman claims refers to the Thirty-Nine Entities. Chapman assumed paperwork existed about the promise, but he submitted

---

[2] The thirty-nine entities are Harbor Hospital Managers of Southeast Texas, LLC; Harbor Hospice Managers, LLC; Harbor Hospice of Alexandria, LP; Harbor Hospice of Arlington, LP; Harbor Hospice of Bay City, LP; Harbor Hospice of Bryan-College Station, LP; Harbor Hospice of Corpus Christi, LP; Harbor Hospice of Central Houston, LP; Harbor Hospice 28, LP; Harbor Hospice of Central San Antonio, LP; Harbor Hospice of East Dallas-Fort Worth, LP; Harbor Hospice of East Houston, LP; Harbor Hospice of East Texas, LP; Harbor Hospice of Fort Worth, LP; Harbor Hospice of Georgetown, LP; Harbor Hospice of Harlingen, LP; Harbor Hospice of Houston, LP; Harbor Hospice of Livingston, LP; Harbor Hospice 26, LP; Harbor Hospice of McAllen, LP; Harbor Hospice of Medical Center-Houston, LP; Harbor Hospice of North Dallas-Fort Worth, LP; Harbor Hospice of North San Antonio, LP; Harbor Hospice Northwest Houston, LP; Harbor Hospice of Richmond, LP; Harbor Hospice of San Antonio, LP f/n/a Harbor Hospice of South Texas, LP; Harbor Hospice of South Dallas-Fort Worth, LP; Sunshine Hospice, LP; Harbor Hospice of South Houston, LP; Harbor Hospice of South San Antonio, LP; Harbor Hospice of Texas, LP; Harbor Hospice 27, LP; Harbor Hospice of Victoria, LP; Harbor Hospice of West Dallas-Fort Worth, LP; Harbor Hospice of West Houston, LP; Harbor Hospice of Longview, LP; Harbor Hospice Southeast Houston, LP; Harbor Hospice of Texarkana, LP; and Harbor Home Health, LP.

no written documents to support his claim that he held ownership interest in the Thirty-Nine Entities. Chapman's deposition reflects that he claimed that Arfeen, in 2005, represented Chapman would have a 2% interest at the beginning of the Harbor venture. According to Chapman, Arfeen told him that they "would be partners and work together for years."

### 1. Statute of Frauds

The Thirty-Nine Entities argue Chapman has no ownership interests in the Thirty-Nine Entities, and Chapman's alleged oral agreement violates the statute of frauds. The Thirty-Nine Entities also assert Chapman's claims cannot be saved by any equitable exceptions that exist to their statute of frauds defense, such as promissory estoppel.

"The statute of frauds exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be in writing and signed by the parties." *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001). It is an affirmative defense in a breach of contract suit and renders a contract that falls within its purview unenforceable. Tex. Bus. & Com. Code Ann. § 26.01(a) (West 2015); *see also S & I Mgmt., Inc. v. Sungju Choi*, 331 S.W.3d 849, 854 (Tex. App.—Dallas 2011, no pet.). Whether an agreement falls within the statute of frauds is a question of law, but the determination of whether an exception to the statute of frauds applies is

generally a question of fact. *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 642 (Tex. 2013);

*Kalmus v. Oliver*, 390 S.W.3d 586, 589 (Tex. App.—Dallas 2012, no pet.).

The statute of frauds provides that an agreement "which is not to be performed within one year from the date of making the agreement" is not enforceable unless it is in writing. Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(6). "For the one-year provision to apply, performance within one year must be impossible." *Abatement Inc. v. Williams*, 324 S.W.3d 858, 860 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). In deciding whether an agreement is capable of being performed within one year, we compare the date of the agreement to the date when the performance under the agreement is to be completed. *See* Tex. Bus. & Com. Code Ann. § 26.01(b)(6); *Young v. Ward*, 917 S.W.2d 506, 508 (Tex. App.—Waco 1996, no writ). If there is a year or more between those two dates, a writing is required to render the agreement enforceable. *Young*, 917 S.W.2d at 508.

The Thirty-Nine Entities have partnership agreements, which state:

> The term of the partnership shall commence on the effective date of [the] agreement and shall continue for ninety-nine (99) years, after which date the partnership shall dissolve, unless sooner dissolved in accordance with the [Texas Partnership] Act or upon the occurrence of any of the following events of dissolution:
>
> (a)    the voluntary bankruptcy of the partnership;
> (b)    the termination and winding up on the partnership pursuant to other provisions contained elsewhere herein; or
> (c)    the written agreement of all partners to dissolve the Partnership[.]

Based on the language in the agreements, the agreements did not contemplate that the undertaking would be completed within a year. *See id.* at 507–10. Additionally, even Chapman's account that they would be partners and work together for years does not indicate that the alleged promise could be completed within a year. Finally, a large number of the Thirty-Nine Entities did not come into existence until after 2006. We conclude the agreement concerned an undertaking that could not be completed within a year. *See Hairston v. S. Methodist Univ.*, 441 S.W.3d 327, 334–35, (Tex. App.—Dallas 2013, pet denied) (deciding that a proposed oral agreement concerning a soccer scholarship made two years prior to the player potentially playing for the college could not be completed within a year's time of the agreement being allegedly made; thus, the statute of frauds applied to the agreement); *see also Gano v. Jamail*, 678 S.W.2d 152, 154 (Tex. App.—Houston [14th Dist.] 1984, no writ) (concluding that an oral agreement between lawyers could not be performed in less than a year given the nature of the business and based on the testimony by the lawyer seeking to enforce the agreement). Because the statute of frauds applies to the alleged promise regarding the Thirty-Nine Entities, the oral promise, unaccompanied with a written document, is unenforceable. *See Dynegy*, 422 S.W.3d at 641.

Chapman also argues that the statute of frauds does not apply to the partnerships in his case. We disagree. Relying on *Citrin Holdings, LLC v. Minnis*, No. 14-11-00644-CV, 2013 WL 1928652 (Tex. App.—Houston [14th Dist.] May 9, 2013, pet. denied), Chapman contends that the statute of frauds does not apply to his claims because he raised a fact issue as to whether he established a statutory partnership as provided by section 152.052(a) of the Texas Business Organizations Code. *See* Tex. Bus. Orgs. Code Ann. § 152.052(a) (West 2012). However, *Citrin Holdings* does not hold that section 152.052 provides an exception to the application of the statute of frauds for partnerships; but rather, that the statute of frauds does not prevent a plaintiff from seeking recovery of his out-of-pocket damages because he relied upon an oral promise. *See id.* at *15 n.22. Chapman did not complain in the trial court or on appeal that the alleged oral promise to be partners with Arfeen in all future Harbor entities resulted in him suffering out-of-pocket damages. We overrule Chapman's claims that the statute of frauds does not apply to the Thirty-Nine Entities to which he claims he has an ownership interest.

## 2. Promissory Estoppel Exception

Because the Thirty-Nine Entities established their statute of frauds affirmative defense as a matter of law, the burden shifted to Chapman to raise a fact issue showing that an exception allowed him to avoid the application of the statute. *See*

*id.* Promissory estoppel is such an exception. *Hairston*, 441 S.W.3d at 334; *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 438 (Tex. App.—Dallas 2002, pet. denied).

> Promissory estoppel applies to . . . allow the enforcement of an otherwise unenforceable oral agreement when (1) the promisor makes a promise that he should have expected would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid the injury.

*Exxon Corp.*, 82 S.W.3d at 438 (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982)).

Chapman claims in his response to the Thirty-Nine Entities' motion for summary judgment and in his appellate brief that his reliance on the alleged oral agreement was that he continued to work for the entities, assisting them in return for the promised interest. Chapman was, however, compensated for his work. Chapman testified he received an annual salary while employed that increased throughout the years. Thus, Chapman, cannot rely on the fact he continued to work to raise a fact issue on his promissory estoppel claim. *See Hairston*, 441 S.W.3d at 334; *Exxon Corp.*, 82 S.W.3d at 438; *Nagle*, 633 S.W.2d at 800.

Because the statute of frauds barred the enforcement of the alleged oral partnership agreement that Chapman was to own at least a 2% interest in all future Harbor ventures, and promissory estoppel did not serve as an exception to the statute

of frauds, we overrule issue four and affirm the trial court's grant of summary judgment in favor of the Thirty-Nine Entities.

**D. Issue Five: Alleged Mistake of Not Addressing All Defendants Under the Summary Judgment Proceedings**

In issue five, Chapman asserts the trial court erred in dismissing all his claims against Arfeen, Arfeen Properties, Harbor Hospice of East Texas, and Harbor Hospice of Harlingen as these defendants did not seek summary judgment on the claims he filed against them.

All Defendants, including Arfeen individually and Arfeen Properties, collectively moved for summary judgment. Included within Defendants' summary judgment evidence were the formational partnership documents for both Harbor Hospice of East Texas and Harbor Hospice of Harlingen. Neither of the partnership agreements for those entities listed Chapman as a partner and Chapman did not provide any summary judgment evidence establishing any ownership interest other than the oral agreement discussed in issue four. Harbor Hospice of East Texas and Harbor Hospice of Harlingen are parties included in the Thirty-Nine Entities, and Chapman's claims against them are barred for the reasons we explain in resolving issue four.

With respect to Arfeen and Arfeen Properties, Chapman alleges that both were complicit in wrongfully converting and transferring his ownership interests in the

36

Harbor entities to Arfeen or to Arfeen Properties. Neither Arfeen individually nor Arfeen Properties moved for summary judgment on any defenses not raised by the Harbor entities. In Chapman's live pleading, he alleges various causes of action against Arfeen and Arfeen Properties complaining about the alleged conversion of his ownership interests in the various entities. Neither Arfeen nor Arfeen Properties filed special exceptions to Chapman's pleadings.

For the same reasons as explained in resolving issues two and three, we reverse the trial court's order dismissing Chapman's claims against Arfeen and Arfeen Properties for fraud, breach of contract, breach of fiduciary duty, and for declaratory judgment. The trial court's order on Chapman's claims for theft and conversion are affirmed.

## IV. CROSS-APPEAL OF CHAPMAN'S MOTION FOR SUMMARY JUDGMENT

### A. Cross-Appeal Issue One: Denial of Attorney's Fees Requested by Defendants

In the first issue of their cross-appeal, Defendants claim the trial court improperly granted summary judgment in its July 22, 2016 order for Chapman and denied their claim for attorney's fees under the Texas Declaratory Judgments Act and the Texas Theft Liability Act. Under Texas law, a court may award attorney's fees only when authorized by statute or by the parties' contract. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). Whether a party is

entitled to seek an award of attorney's fees is a question of law that we review *de novo*. *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999).

The Declaratory Judgments Act provides that an award of costs and attorney's fees is discretionary with the trial court. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2009); *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (stating that the Declaratory Judgments Act "does not require an award of attorney fees to the prevailing party"). In contrast, under the Texas Theft Liability Act, the prevailing party "shall be awarded court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. Code Ann. § 134.005(b) (West 2011); *Moore v. Amarillo-Panhandle Humane Soc'y, Inc.*, 541 S.W.3d 403, 405 (Tex. App.—Amarillo 2018, pet. denied).

Because we have reversed the trial court's ruling on Chapman's declaratory judgment claim, the Defendants' have not yet prevailed on their defense to those claims. On the other hand, we affirmed the summary judgment order to the extent the trial court dismissed Chapman's Texas Theft Liability Act claims. As the prevailing party, the Defendants were entitled to an award on these attorney's fees and costs upon presenting evidence of a reasonable fee. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134.005(b).

Chapman moved for both a no-evidence and traditional summary judgment against Defendants claiming they were not entitled to these fees. *See* Tex. R. Civ. P. 166a(c), (i). In his motion, Chapman asserted that Defendants failed to provide any evidence of the reasonableness of the fees incurred defending the theft claim. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2012); *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Chapman further argued Defendants' claim for attorney's fees should be dismissed because they relied on an employment agreement between Defendants' law firm and Arfeen, dated April 23, 2015, which he asserts was insufficient to satisfy their burden to prove the amount and necessity of a reasonable fee.

In response, Defendants requested that the trial court take judicial notice of the case file and note that Defendants had made repeated appearances in the case. Defendants stated that "[p]lainly, reasonable and necessary attorney's fees have been incurred with respect to the defeat of . . . the Theft Liability Act claims." Defendants acknowledge the contract between Arfeen and the law firm failed to segregate the fees Arfeen agreed to pay among all Arfeen's businesses or between the defense of Chapman's claims. Nevertheless, they argue the agreement Arfeen signed to pay attorney's fees still serves at least as "*circumstantial* evidence" on some of the *Anderson* factors.

Texas law does not require detailed billing records or other documentary evidence as a prerequisite to awarding attorney's fees. *See, e.g.*, *Tex. Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 517–18 (Tex. 1999) (per curiam); *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892–93 (Tex. App.—Austin 2010, pet. denied). "It has consistently been held that an attorney's testimony about his experience, the total amount of fees, and the reasonableness of the fees charged is sufficient to support an award." *Metroplex Mailing Servs., LLC v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.) (citing *In re A.B.P.*, 291 S.W.3d 91, 99 (Tex. App.—Dallas 2009, no pet.). Parties seeking attorney's fees must segregate between claims for which they are recoverable and claims for which they are not. *Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). It was Defendants' burden on summary judgment to raise an issue of material fact that reasonable and necessary fees were incurred as the prevailing party to the Texas Theft Liability Act claim, not conclusively establish the amount of those fees. *See* Tex. R. Civ. P. 166a(c), (i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

The amount of reasonable and necessary attorney's fees that Defendants incurred is determinable at trial. We sustain Defendants' first issue, and reverse and remand the case to the trial court for further proceedings, as required on the

Defendants' claims for attorney's fees and costs as related to their Texas Theft Liability claims. We reverse and remand the trial court's order dismissing the Defendants' claim for attorney's fees associated with Chapman's declaratory judgment claims and remand the case to the trial court for further proceedings dependent upon the resolution of Chapman's declaratory judgment claims.

**B. Cross-Appeal Issue Two: Alleged Improper Grant of Summary Judgment on Issue Not Raised in Summary Judgment Motion**

In their second issue, Defendants contend the trial court improperly granted summary judgment on a cause of action not addressed in Chapman's motion. Defendants point to their third amended counter-petition, which they filed after Chapman moved for summary judgment and they assert it raised a new claim. Defendants' claim Chapman's actions or inactions resulted in them having to defend a lawsuit filed against them by another entity. While this is a new allegation, it is not a new cause of action. Defendants' claimed that Chapman had breached his fiduciary duty or his duty of care to them in their earlier pleadings. Chapman's motion addressed the breach of duty claims. We overrule Defendants' second issue.

**C. Cross-Appeal Issue Three: Business Judgment Rule Defense to Defendants' Counter-Claims for Breach of Fiduciary Duty and Duty of Care**

In Defendants' third issue, they argue the trial court improperly granted summary judgment relief for Chapman because the business judgment rule did not

immunize him from liability for all his actions. Defendants claim Chapman's actions, which were the subject of their counterclaim, were beyond the protections afforded by the business judgment rule. The Defendants based one of their claims against Chapman on a letter sent to Defendants notifying them of an entity's intent to sue Defendants based on their alleged breach of contract with that entity. Defendants claim Chapman received this letter and failed to notify them about it, resulting in the entity suing on a claim they ultimately settled. Defendants also claim that Chapman's alleged failure to notify others regarding problems with Harbor Hospital of Southeast Texas eventually caused it to lose its operating license. Finally, Defendants argue that Chapman's failure to take any actions regarding "Medicare Gap" issues caused some of the Defendants to incur fines for violating various federal regulations.

Company officers owe a fiduciary duty to the company, which "'includes the dedication of [their] uncorrupted business judgment for the sole benefit of the [company].'" *Ritchie v. Rupe*, 443 S.W.3d 856, 868 (Tex. 2014) (quoting *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963)). As a fiduciary, a company officer owes the company "a strict duty of 'good faith and candor,' as well as 'the general duty of *full disclosure* respecting matters affecting the principal's interests'; there is a 'general prohibition against the fiduciary's using the

42

relationship to benefit his personal interest, except with the full knowledge and consent of the principal." *Hawthorne v. Guenther*, 917 S.W.2d 924, 934 (Tex. App.—Beaumont 1996, writ denied) (quoting *Chien v. Chen*, 759 S.W.2d 484, 495 (Tex. App.—Austin 1988, no writ)). Similarly, "[a] managing partner has a duty to administer the partnership affairs solely for the benefit of the partnership" and "may not place himself in a position where it benefits him to violate this duty." *Id*.

However, the business judgment rule generally protects company officers and directors, who owe fiduciary duties to the company, from liability for alleged breaches of duties that are based on actions that are negligent, unwise, or imprudent if the actions were "'within the exercise of their discretion and judgment in the development or prosecution of the enterprise in which their interests are involved.'" *Sneed v. Webre*, 465 S.W.3d 169, 178 (Tex. 2015) (quoting *Cates v. Sparkman*, 11 S.W.846, 849 (Tex. 1889). Nonetheless, the business judgment rule does not apply to protect a company officer from liability for acts that are dishonest, fraudulent, or self-dealing. *Id.*

Defendants claim Chapman's actions or inactions amount to gross-negligence, but they do not claim or argue that Chapman's actions or inactions were fraudulent, dishonest, or that he engaged in any self-dealing. *See id*. Negligent or grossly negligent conduct falls within the business judgment rule. And, the summary

43

judgment evidence is undisputed that Arfeen knew that the entity sued one of Arfeen's entities, as Arfeen hired an attorney to defend the suit. Based on our review of the record, we conclude Chapman established the business judgment rule applied to the conduct the Defendants relied on for their breach of fiduciary duty and breach of loyalty claims. We overrule Defendants' third issue.

### V. CONCLUSION

In conclusion, the trial court erred in its February 29, 2016 order that granted the Ownership Entities' summary judgment motion against Chapman for his four-year claims based on limitations. We reverse and remand the case to the trial court to consider Chapman's claims governed by the four-year statute of limitations—declaratory judgment requests, breach of contract, breach of fiduciary duty, and fraud—against Qamar U. Arfeen; Arfeen Properties, LP; Harbor Hospice of Beaumont, LP; Harbor Hospice of Gulf Coast, LP; Harbor Hospice of Baytown, LP; Harbor Hospice of Austin, LP; Harbor Hospice of Oakdale, LP; Harbor Hospice of Lafayette, LP; Harbor Healthcare System, LP; Harbor Hospital of Southeast Texas, LP; HHCS Managers, LLC; and Harbor Hospice Managers, LLC. With respect to Harbor Hospice of Lake Charles, LP and Harbor Hospital Land Investors of Southeast Texas, we reverse the trial court's order dated February 29, 2016, barring Chapman's claims against them and remand their claims for further proceedings in

44

the court below. We affirm the trial court's judgment of February 29, 2016 dismissing Chapman's conversion and theft claims against all parties, except Harbor Hospice of Lake Charles, LP and Harbor Hospital Land Investors of Southeast Texas. With respect to Chapman's claims asserting ownership interests in the Thirty-Nine Entities, we affirm the trial court's February 29, 2016 summary judgment order dismissing all of Chapman's claims against these entities.

Regarding the Defendants' claims, we reverse the July 22, 2016 judgment as to the Defendants' claims for attorney's fees and remand the proceeding to the trial court on those claims. We affirm the trial court's July 22, 2016 summary judgment order dismissing all of Defendants' claims against Chapman for breach of fiduciary duty and duty of loyalty.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

_____
CHARLES KREGER
Justice

Submitted on September 28, 2017
Opinion Delivered August 30, 2018

Before McKeithen, C.J., Kreger and Horton, JJ.

45